UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------x

UNITED STATES UNDERWRITERS INS.
CO.,

                          Plaintiff,

        -against-

KUM GANG INC., JUNG HWAN LEE,
YOUNG BOK PARK, JUN ZHI YUAN,
TRAVELERS PROPERTY CASUALTY
CORP., THE ST. PAUL TRAVELERS
COMPANIES, INC., CHARTER OAK FIRE
INSURANCE COMPANY and
HYUNBOON PARK,

                          Defendants.

--------------------------------------------------x

MEMORANDUM AND ORDER
04-CV-2671 (ILG)

GLASSER, United States District Judge:


# INTRODUCTION

This insurance coverage dispute arises from an accident in which an employee of

the Kum Gang restaurant ("Kum Gang" or "Restaurant"), a Mr. Jung Hwan Lee ("Lee"

or "Valet") was parking the car owned by a Restaurant patron Young Bok Park ("Park"

or "Insured")[1] when it struck and caused serious injury to Jun Zhi Yuan ("Yuan,"

"Underlying Plaintiff," or "Injured"). The insurer of Young Bok Park is Charter Oak Fire

Insurance Company ("Charter Oak").[2] Kum Gang's commercial insurer is United States

---

[1] Hyunboon Park, also named in this action, is the wife of Young Bok Park. (Def. 56.1 Stmt. ¶ 4).

[2] The Charter Oak policy states that it is a "Travelers" policy. In addition to Charter Oak, the Complaint names other insurance companies, Travelers Property Casualty Corp., and the St. Paul Travelers Companies, Inc., to which the parties refer interchangeably as the automobile insurers of the Parks. The parties do not clearly define the legal relations between these insurance companies, but those relationships are not relevant to this motion, as any and all of them are alleged to be liable exclusively

Underwriters ("Underwriters" or "Plaintiff").

As of the date of the filing of this action in federal court, an underlying personal injury action in state court was ongoing (Index No. 9614/03, <u>Jun Zhi Yuan v. Kum Gang Inc., Jung Hwan Lee and Young Bok Park</u>).  Underwriters now moves this Court to declare (a) that Underwriters is not obligated to defend Kum Gang in the underlying action because of  "automobile exclusion" and "premises limitation endorsement" provisions in their policy; (b) that Charter Oak is the primary insurer of Lee and Kum Gang and has a duty to defend them in the underlying action; and (c) that in the event Underwriters does not obtain the aforementioned declarations, it is only obligated to pay for coverage in excess of the Charter Oak policy.

Defendant Charter Oak cross-moves for summary judgment.  It seeks declarations (a) that Charter Oak's insurance policy does not afford coverage to defendants Kum Gang and Lee because of an "auto business exclusion" and a timely disclaimer; (b) that Underwriters is the primary insurer for Lee and Kum Gang; (c) that Underwriters is obligated to defend Kum Gang and Lee in the underlying personal injury action; and (d) that in the event coverage is concurrent, liability should be apportioned on a pro rata basis pursuant to the Charter Oak policy.

For the following reasons, Plaintiff's motion is denied and the defendants' cross-motion is granted in part and denied in part.

## <u>DISCUSSION</u>

The relevant facts are essentially undisputed.  On March 15, 2003, Park, the

---

because of the policy issued to the Parks and attached as Exhibit 7.  For the purposes of this motion, they are referred to collectively as "Charter Oak."

owner of a Toyota with license plate number AMG 2114, drove his car up the Kum Gang driveway and relinquished control of the vehicle to Lee, who was working at that time as a "valet parker" for the Kum Gang Restaurant, which offered valet service ancillary to its business.  (Yoo Dep., 5:18-6:11, Oct. 07, 2004).  (See also, Defs. 56.1 Stmt. ¶ 1); (Kleinberg Decl., Ex. 12 Young Bok Park Dep. "Park Dep." 6:6-16, Oct. 07, 2004).[3]

For the purpose of parking the car in a nearby parking lot (the "YMCA" lot) used by the Restaurant, Lee exited the Kum Gang driveway onto Northern Boulevard and, roughly two car lengths from the mouth of the driveway, struck pedestrian Yuan.  (Ex. 14, Jun Hwan Lee Dep. "Lee Dep." 15:21-23, Oct. 07, 2004).

The Kum Gang Restaurant is located at 138-28 Northern Boulevard and the YMCA lot is located at 138-46 Northern Boulevard.  In order to arrive at the YMCA lot from the Kum Gang driveway, a driver must exit the Restaurant driveway and go around the block to Bowne Street.  (Yoo Dep., 114:10-16, Oct. 07, 2004).

Shortly after the accident, on March 18, 2003, a letter was sent by Yuan's counsel to the Parks.  This letter requested that they notify their insurer of Yuan's claim and that it "forward an Application for No-Fault Form, forthwith."  (Ex. 8).  Charter Oak created a claim file for the incident.  (Ex. 9).  The file indicates that Charter Oak was aware that Lee was an employee of Kum Gang and was driving the insured vehicle when the accident occurred.  (Plt. 56.1 Stmt. ¶ 18) (Exs. 8, 9).

Subsequently, sometime between March 28 and 31 of 2003, Underwriters was notified of the accident by its agent, Morstan General Agency.  (Defs. 56.1 Stmt. ¶ 35;

---

[3] All references to exhibits are to those attached to the "Kleinberg Declaration."

Plt. Rep. 56.1 Stmt. ¶ 7).[4]  On April 3, 2003, Underwriters began an investigation of the claim.  While the investigation was ongoing, on April 11, 2003, Yuan brought suit in New York state court against the Parks, Lee, and Kum Gang.  (Plt. 56.1 Stmt. ¶ 5); (Ex. 5).  On May 14, 2003, Underwriters issued a written disclaimer of coverage to Kum Gang.  (Defs. 56.1 Stmt. ¶ 7) (Ex. 6E).  That letter disclaimed coverage based on policy exclusions discussed below.  Although Underwriters declined coverage to Kum Gang in May, it did not send a letter to Charter Oak requesting it to provide coverage or a defense to Kum Gang and Lee until December 16, 2003.  (Defs. 56.1 Stmt. ¶ 11).  (Exs. 5, 10).  There is no record, in fact, that either Lee or Kum Gang or anyone acting on their behalf requested Charter Oak to defend them prior to receiving the December 16 letter.  In reply, Charter Oak determined that it was not obligated to insure Kum Gang, and notified Underwriters of its disclaimer on December 23, 2003.  (Defs. 56.1 Stmt. ¶ 12).  Coverage was disclaimed because it asserted that: 1) the "Auto business" exception precluded its obligation to defend; and 2) there was a breach of the requirements of timely notification of the claim by Kum Gang and Lee.  (Ex. 11).

On June 24, 2004, Underwriters filed this summary judgment motion seeking declaratory relief.  (Plt. 56.1 Stmt. ¶ 1).  The present motion and cross-motion were fully briefed by August of 2005.  The record does not reflect that the underlying action has been adjudicated, settled, or otherwise disposed of.

## I.  Declaratory Relief

### A.  28 U.S.C. § 2201

---

[4] It is not clear who notified Underwriters' agent regarding the loss, but the document is produced in the record at the "Affidavit of Brian McGowan in Support of Plaintiff's Motion for Summary Judgment", Exhibit 6B.

In relevant part, the Declaratory Judgment Act (DJA) provides that "any court of the United States…may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

Actions for declaratory judgment must meet "case or controversy" requirements. A court cannot adjudicate conjectural or hypothetical cases or controversies. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). A controversy cannot be a mere possibility or probability that a person may be adversely affected in the future. Dawson v. Dep't of Transp., 480 F.Supp. 351, 352 (W.D. Okla. 1979). A controversy "must be sufficiently real and immediate, allowing specific and conclusive relief… it must also be ripe for adjudication." Dow Jones & Co., Inc. v. Harrods Ltd., 237 F.Supp.2d 394, 406 (citing Pub. Serv. Cmm'n v. Wycoff Co., Inc., 344 U.S. 237, 244, 73 S.Ct. 236 (1952)). Importantly, "[t]he disagreement…must have taken a fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on its adversaries, and some useful purpose to be achieved in deciding them." Pub. Serv. Com'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952).

To maintain jurisdiction for declaratory relief, plaintiffs must show that they meet the above prerequisites at the time the case is heard. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956 (1969). See also Ford v. Reynolds, 326 F.Supp.2d 392, 404 (E.D.N.Y. July 23, 2004) (citing Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95-96, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993).

The DJA expressly confers discretion upon the district court to decide whether it will entertain jurisdiction over the action. Apotex Inc. v. Sanofi-Synthelabo et al., 386

F.Supp.2d 549, 551 (S.D.N.Y. 2005) (citing <u>Dow Jones & Co., Inc. v.  Harrods Ltd.</u>, 346

F.3d 357, 359 (2d Cir. 2003)).  When exercising its discretion, the Court considers the

litigation as a whole.  <u>Gianni Sport Ltd. v. Metallica</u>, 2000 WL 1773511, *4 (S.D.N.Y.

2000).  In this consideration "practicality and wise judicial administration

predominate."  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d

214 (1995).  The DJA does not expand the jurisdiction of the Court, it only provides an

additional form of relief which the Court may provide if there is an independent basis for

jurisdiction over the claim.  <u>Paulsen v. Lehman</u>, 839 F.Supp. 147 (E.D.N.Y. 1993).

Finally, courts should be wary of entering declaratory judgments when the suit

interferes with an action already filed.  <u>Apotex</u>, 386 F.Supp.2d at 551 (citing <u>Farrell</u>

<u>Lines Inc. v. Columbus Cello-Poly Corp.</u>, 32 F.Supp.2d 118, 124 (S.D.N.Y. 1997)).

Declaratory relief should not be ordered if it will interfere with an orderly and

comprehensive disposition of the litigation in state court.  <u>Brillhart v. Excess Ins. Co. of</u>

<u>America</u>, 316 U.S. 491, 62 S.Ct. 1173 (1942).  Courts should also be wary of requests for

declaratory relief which involve either "procedural fencing" or a "race to res judicata."

<u>Dow Jones</u>, 346 F.3d at 359-60.  "The anticipation of defenses is not ordinarily a proper

use of the declaratory judgment procedure." <u>28 U.S.C.A. § 2201</u> n. 613, 182 (1994)

(citing <u>Hanes Corp. v. Millard</u>, 531 F.2d 585 (D.C. Cir. 1976) rev'd on other grounds,

<u>Shearson/American Exp., Inc. v. McMahon</u>, 482 U.S. 220, 107 S.Ct. 2332, (1987).

### B.  Application of 28 U.S.C. § 2201

The two insurers in this action, Underwriters and Charter Oak, both disclaim

liability based on particular policy provisions and each asserts that the other is liable for

the defense of Kum Gang and Lee.  Both parties also seek determinations of contribution

priorities should the underlying plaintiff obtain a favorable judgment against the underlying defendant-insureds.

Because neither insurer is a party in the underlying litigation (Ex. 5), it is apparent that the issues of coverage cannot properly be litigated in the tort action, making two suits necessary. 10B <u>Wright Miller Cooper</u>, <u>Federal Practice and Procedure</u>, § 2760, p. 566. When a determination of the duty to defend can be made and thus clarify the insurer's obligations in the underlying tort action, the DJA is properly invoked. (<u>See</u>, <u>e.g.</u>, <u>Metropolitan Property & Liability Ins. Co., v. Kirkwood</u>, 729 F.2d 61, 63 (1st Cir.1984) (deciding whether a policy required the insurer to defend the tort action would prevent a potential conflict of interest between the insurer and the estate of the deceased's defendant that would otherwise arise).

Here, the questions of whether there is a duty to defend in the underlying action as well as whether or not the insurers are liable or have issued valid disclaimers are ripe for adjudication. It is therefore proper to consider the coverage provided by the policies, whether the insurer is required to defend an action, and other questions regarding the rights and duties of the insurer and the insured in the ongoing suit. <u>See</u> <u>Coregis Ins. Co. v. McCollum</u>, 955 F.Supp. 120 (M.D.Fl. 1997) ("plaintiff [insurer] has a right to know whether it is bound under its contract to defend its insured and whether or not it would be liable under the coverage of its policy in the event the state court renders a judgment against it"); <u>County of Wyoming, New York v. Erie Lackawanna Ry. Co., 360 F.Supp. 1212, 1217 (W.D.N.Y. 1973</u>) (despite cases pending in another federal court, district court could decide which insurer had a duty to defend an insured in an underlying action).

Although it is proper to consider the insurers' rights and obligations in the underlying action, it would be premature to prospectively determine their relative financial obligations to the plaintiff in the underlying action when no judgment has yet been obtained. Actions between insurers for liability priorities on underlying claims "should not be entertained until there has been judgment against the insured." 10B Federal Practice and Procedure, § 2760, p. 570, n. 16.

In American Fidelity and Cas. Co., Inc. v. Penn. Threshermen & Farmers' Mut. Cas. Ins. Co., 280 F.2d 453 (5th Cir.1960), the Fifth Circuit reviewed the propriety of entering declaratory judgments between insurers where the underlying dispute had not been resolved. In that case, there was an ongoing underlying tort action in the Southern District of Georgia against two defendant companies, "Clay" and "Britt." Clay was insured by "American" and Britt by "Pennsylvania." Both companies owned fleets of tractor-trailer units. To haul a particular load of tobacco, Britt leased a trailer unit and driver from Clay. That vehicle was subsequently involved in an accident with a passenger car whose occupants were seriously injured. American disclaimed coverage, arguing that Pennsylvania and Britt had the duty to defend Clay based upon an "other insurance" clause in American's contract.[5] In addition to the question of defense, there was also the issue of whether or not Pennsylvania had to contribute to any potential

---

[5] As noted in American Fidelity, that "other insurance" clause stated:
Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable for (a) a greater portion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, (b) with respect to any automobile of the commercial type while leased or loaned to any person or organization, other than the named insured, engaged in the business of transporting property by automobile for others, the insurance shall be excess insurance over any other valid and collectible insurance.'
American Fidelity, 280 F.2d at 456 n.5.

judgment that might be obtained in the underlying litigation.

Although the Fifth Circuit found it proper to decide the question of the duty to defend the suit, it held that the question of apportionment of liability was premature, and might depend upon the determination of facts in the underlying action.  As that court stated:

> There was one real problem presented: did American own [sic] Clay a defense?... We have spelled it out in no uncertain terms. To this extent the trial court's action and our affirmance is an effective declaration of right and duty....The rest of the asserted controversy may never be, but when it is or what it is when it is, a proper court can then resolve those tangible controversies as the case might require. The District Court was careful to make his dismissal without prejudice to those further rights, and it was well within its considered judicial discretion to decline to express legal opinions on academic theoreticals which might never come to pass.

(Id., at 461).

Similar to American Fidelity, the present declaratory action seeks consideration of both the duty to defend and of liability, as well as the subsequent question of apportionment of liability.  At this point, a determination of the insurers' respective liability exposure is nothing more than theoretical.  Such a determination might be made moot by a finding of non-liability in the state court action.  See Bellefonte Reinsurance Company v. Aetna Casualty and Surety Co., 590 F.Supp. 187 (S.D.N.Y. 1984) (where adjudication of issues by court could become moot on account of decision in underlying action, case was highly speculative and theoretical, and opinion would be nothing more than advisory).  See also, Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671 (2d Cir.1996) (dismissing for lack of case or controversy a declaratory judgment action by an excess insurer where the underlying liability of the insured and the sufficiency of the primary insurer's funds had not yet been determined);

SR Int'l Bus. Ins. Co., Ltd. v. World Trade Center Properties, LLC, 2005 WL 827074 (S.D.N.Y., Feb 15, 2005) (citing Bellefonte with approval).

As noted in American Fidelity, "[t]he mandatory obligation of a District Court to accept and determine a suit for declaratory relief is not commensurate with the full scope of a 'case or controversy' within the constitutional sense." (Id., at 461) (citations omitted). Therefore, the Court declines to exercise jurisdiction over both Underwriters' and Charter Oak's requests for declarations regarding primary and excess coverage and ratable contribution to any potential loss payable should the underlying plaintiff prevail.

## II.  Summary Judgment

Here, the facts of the matter are largely undisputed—what is contested is the applicable law.  Nevertheless, the parties' requests for declaratory judgment must be evaluated by the oft-rehearsed rules of summary judgment.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." One of the principal purposes of summary judgment is to "isolate and dispose of factually unsupported claims or defenses..." Celotex Corp. v. Catrett, 477 U.S. 317, 323-4 (1986).

As an initial matter, "the moving party bears the burden of establishing the absence of any genuine issue." Grabois v. Jones, 89 F.3d 97, 99-100 (2d Cir. 1996) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Once the movant points to the absence of an issue, the non-moving party must produce evidence of a genuine issue of

material fact.  The nonmoving party "may not rest upon the mere allegations or denials" of its pleadings; rather, its response must go beyond the pleadings to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  A genuine issue of material fact exists when there is sufficient evidence favoring the nonmoving party such that a jury could return a verdict in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

When evaluating a motion for summary judgment, "[t]he courts must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor."  L.B. Foster Co. v. American Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  If there remains no genuine issue of material fact then the moving party is entitled to judgment as a matter of law.

### III.  Did Underwriters have a Duty to Defend?

Plaintiff moves the Court for a declaration that it is not liable to defend Lee and Kum Gang in the underlying action.  Charter Oak moves the Court for a declaration that the obligation exists.  Reviewing the evidence with the proper deference granted to the non-movant on a motion for summary judgment, it is clear that Underwriters propose no basis upon which they could properly disclaim coverage, whereas Charter Oak shows that there is no material fact that might arguably make them obligated to defend Lee and Kum Gang in the underlying action.

### A.  Standards of Interpretation for Insurance Exclusions

It is well-settled that "exclusions from insurance policy coverage are given strict construction."  Kimmins Indus. Serv. Corp. v. Reliance Ins. Co., 19 F.3d 78, 81 (2d

Cir.1994).  See also, State of N.Y. v. Blank, 27 F.3d 783  (2d Cir.1994).  Policy exclusions are interpreted in a manner most beneficial to the insured.  MH Lipiner & Son, Inc. v. Hanover Ins. Co., 869 F.2d 685, 687 (2d Cir.1989).  The insurer bears the burden of proving that the exclusion applies, that it is stated in clear and unmistakable language, and is subject to no other reasonable interpretation.  Continental Casualty Co. v. Rapid-American Corp., 80 N.Y.2d 640, 652 (1993).

### B.  Automobile Exclusion

Underwriters asserts that it did not have a duty to defend Kum Gang because of an "auto exclusion" clause in its general commercial liability coverage.  Underwriters contends that the car was on a "public roadway" when the accident occurred and so the parking exception does not apply.

Underwriters has a duty to pay sums the insured becomes legally obligated to pay for bodily injury, as well as defend the insured, unless one of several exceptions applies.  The "bodily injury exclusion" for the use of automobiles states, in relevant part:

> Exclusion g:  Aircraft, Auto or Watercraft:
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."
> This exclusion does not apply to:
> ...
> (3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured.
> ...

(Kleinberg Decl., McGowan Aff., attached as Ex. 6A, page 3 of 13).

It is well-settled that an exclusion must be clear and unambiguous in order to be enforceable.  Continental, 80 N.Y.2d at 652.  This "auto exclusion" does not conform to

those standards.  Contrary to Underwriters' interpretation, "parking" a car could be understood to include taking a car from its drop-off point to its designated parking place.  Underwriters offers no explanation for why "parking" could not carry this more expansive meaning, or even why their very limited understanding of "parking" should impliedly exclude any and all driving on a public roadway.  Since the policy is subject to at least one other interpretation favorable to the insured, it does not provide for a "clear and unmistakable" exclusion applicable here.

Other evidence supports this conclusion.  Both the Restaurant premises and the YMCA lot were covered by the Underwriters insurance policy. The fact that two premises are insured makes it reasonable to interpret the movement from one premises to another a covered act.  It is clear that Underwriters was aware that Kum Gang was conducting a valet parking operation that involved an off-site parking lot, and Underwriters makes no assertion to the contrary.

Additionally, the language of the exclusion does not specify that coverage under the parking exception is void when the vehicle is on a public roadway.  If it had been intended that the exclusion cover transportation between the two premises separated by a public roadway, that intent could have been easily and clearly expressed in the exception.  It wasn't.

This result is supported by the case law.  At least one state court case addressing the issue has found that parking exceptions, particularly when there is language expanding coverage beyond the property line of the insured premises, include some modicum of driving.  See, e.g., General Accident Group v. Frintzilas, 111 Misc.2d 306 (N.Y. Sup. Ct. 1981) (where there was a premises limitation to the parking exception

which defined the insured premises to include "the ways immediately joining the premises on land," the Court took "judicial notice of the fact that the operation of a parking lot necessarily involves the use of adjacent streets as well as curb cuts and driveways.").

Underwriters' arguments are unavailing. First, Underwriters creates a straw-man interpretation of the parking exception, contending that the exception "does not serve to extend coverage to all areas that an insured may travel." (Plt. Rep. Mem. 15). That may be so, but it does not describe the facts of this case, where the insured was taking a car from the Restaurant to park at other insured premises. That the clause may clearly prohibit certain types of travel unrelated to the parking of a car is therefore irrelevant.

Underwriters argues that the present situation involves "two non-contiguous premises that required considerable travel on a public highway." (Plt. Rep. Mem. 15). These arguments are really concerning the premises limitation endorsement, and are therefore addressed there. To the extent they were intended to apply to the auto exclusion provision, it can be said that neither case cited by plaintiff deals with parking exceptions to automobile exclusions, and they are therefore inapposite. See Bausch v. Machovoe, 8 A.D.3d 1017, 778 N.Y.S.2d 790 (4th Dep't 2004); and Hartford Ins. Co. v. Moore,71 A.D.2d 1013, 420 N.Y.S.2d 415 (2d Dep't 1979). Moreover, the "off-site" premises identified here were around the corner from the Restaurant–to characterize that as "considerable" travel is, to say the least, extremely exaggerated.[6] A reasonable insured could conclude from that language that the "parking" of a car, understood as the

_____

[6] The addresses of the two insured premises, 138-28 and 138-46 Northern Boulevard, would suggest that they are virtually contiguous, and moving from one to the other would not entail "considerable" travel.

movement of the car from its drop-point to its parked location at an insured premises, would be insured.

The Court therefore declares that the "auto exclusion" for bodily injury in the Underwriters policy does not absolve Underwriters of a duty to defend Kum Gang in the underlying action.

## C.  Premises Limitation Endorsement

### 1.  Interpretation of endorsements

Under New York law, an endorsement must be read in conjunction with the entire policy, and the words of the policy remain in full force and effect except as modified by the endorsement.  County of Columbia v. Continental Ins. Co., 83 N.Y.2d 618, 628 (1994).  An insurance policy should not be read so that certain provisions of the policy are rendered meaningless. (Id.) (citing Bretton v. Mutual of Omaha Ins. Co., 110 A.D.2d 46, 49-50 (1st Dep't 1985).  When an endorsement indicates that it leaves the terms and conditions of the policy unchanged, the endorsement does not abrogate or nullify the terms and conditions of a policy element not explicitly referred to in the endorsement.  Birnbaum v. Jamestown Mut. Ins. Co., 83 N.E.2d 128, 131 (1948).  An exclusionary provision must be drawn in such clear and unmistakable terms that no one could be misled.  Id. (citing Kratzenstein v. Western Assur. Co. of Toronto, 71 Sickels 54 (2d Div. 1889) (emphasis added)).

### 2.  The Underwriters premises limitation endorsement

Underwriters disclaims coverage based upon a premises limitation endorsement which reads, in relevant part:

This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place at the location set forth in this endorsement and that this insurance shall not apply to an "occurrence" that takes place at any other location. The company does not have the duty to defend any "suit" seeking damages on account of any "occurrence" that takes place at any locations other than the locations set forth below:
> 138-28 Northern Boulevard, Flushing, NY [the restaurant]
> 138-46 Northern Boulevard, Flushing, NY [the YMCA parking lot]
and; <u>All other terms and conditions remain unchanged</u>.

(<u>Kleinberg Decl.</u>,Ex. 6A) (emphasis added).

Here, the premises limitation endorsement refers generally to off-premises liability. It does not specifically address the automobile exclusion or parking exception. Indeed, the language of the endorsement appears to accommodate the parking exception. Both the Restaurant premises and YMCA parking lot are listed as covered locations. The endorsement indicates that "all other terms and conditions remain unchanged." This clause thus bars the endorsement from changing policy elements not explicitly referred to–including the parking exception. Were the endorsement intended to preclude insurance for the "parking" of cars at the off-site lot, it would all but render meaningless the "parking" exception--without making any specific reference to the clause which embraces "parking...<u>on the ways</u> next to premises you own or rent." (Ex. 6A (emphasis added)). Such a furtive modification of a policy's coverage is not a "clear and unmistakable" change. Any disclaimer of a duty to defend Lee and Kum Gang on this basis is therefore invalid. Underwriters therefore had, and continues to have, a duty to defend them in the underlying insurance action, and fails to do so at its peril.

Underwriters cites two cases for the proposition that its premises limitation endorsement should be enforced. (<u>See</u> <u>Bausch v. Machovoe</u>, 8 A.D.3d 1017, 778 N.Y.S.2d 790 (4th Dep't 2004); and <u>Hartford Ins. Co. v. Moore</u>, 71 A.D.2d 1013, 420 N.Y.S.2d 415

(2d Dep't 1979)).  These do not substantiate the holdings that Underwriters attributes to them.

In <u>Hartford</u>, the court determined the rights of the parties under a farmer's comprehensive personal liability policy.  That policy excluded coverage for bodily injury by vehicles except when, among other exceptions, the vehicle was used on the farm premises.  The accident occurred on a public highway approximately 2 and ½ miles from the farm.  (<u>Hartford</u>, 71 A.D.2d. 1014).  The court granted summary judgment in favor of the insurer.  That case is easily distinguished because there was no related off-premises use against which the exclusion had to be measured.

In <u>Bausch</u>, the insurance policy insured a mobile home so long as it remained on the premises.  That court enforced the premises limitation, holding that the insurer was not obligated to defend the insured.  <u>Bausch</u>, 71 A.D.2d at 1018.  That case is distinguished just as readily as <u>Hartford</u>, since the accident occurred off-premises, and there was no other clause in the policy that would have plausibly extended coverage.  As noted above, an endorsement cannot nullify a policy provision <u>sub</u> <u>silentio</u>.

Since the Court has determined that Underwriters had a duty to defend Kum Gang in the underlying action, it does not reach Charter Oak's argument that Underwriters did not timely disclaim its duty to defend.

### III.  Charter Oak Disclaimer

Having determined that Underwriters has a duty to defend, the Court now determines whether Charter Oak also had a duty as a primary insurer to defend Lee and Kum Gang in the underlying action.  Underwriters asserts that the March 18, 2003 report of the accident by Yuan through the Parks gave notice to Charter Oak that Lee

was driving the car, triggering their duty to either defend Lee and Kum Gang or timely disclaim, which Underwriters asserts they failed to do.

Charter Oak asserts that it was never obligated to defend Lee and Kum Gang nor could it be liable, and in any event whatever obligation it may have had to defend the action was nullified by Lee and Kum Gang's failure to timely tender their defense to Charter Oak. The dispute thus revolves around the applicable standards for notice with respect to additional insureds.[7]

It is undisputed that Charter Oak first disclaimed coverage as to Lee and Kum Gang on or about December 23, 2003, when it replied to a December 16, 2003 letter from Underwriters demanding that Charter Oak cover them. However, it is clear that Lee and Kum Gang did not tender their defense to Charter Oak prior to December 16, 2003. Even assuming that Underwriters' December 16, 2003 letter constituted a tendering of defense by Lee and Kum Gang, it fell nine months after the accident as well as after the initiation of the underlying suit and is therefore unreasonably delayed as a matter of law. Cf. First Financial Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64 (N.Y. Ct. App. 2003) (finding 48-day delay without explanation unreasonable as a matter of law). The failure to make that request constitutes a failure to meet a condition precedent of the policy regarding the insured's duty to timely report. Such a failure relieves Charter Oak of any duty it would otherwise have had to defend Lee and Kum

---

[7] The Charter Oak policy defines who is an "additional insured":
For *your car—you*, any *relative*, and anyone else using your car if the use is (or is reasonably believed to be) with *your* permission, are *insureds*. Any other persons or organizations are also *insureds* but only for their liability for the acts or omissions of an *insured* described in the preceding sentence.
(Ex. 7).

Gang.

### A. Duty to Notify Insurer

Under New York law, an insurer's obligation to cover a loss is not triggered unless the named insured gives timely notice of the loss. Travelers Ins. Co. v. Volmar Construction Co., Inc., 300 A.D.2d 40, 42 (1st Dep't 2002) (hereinafter "Volmar"). This duty extends to "additional insureds" under any policy, and notice by one insured will not be imputed as notice by another. (Id., at 44). "Neither notice provided by another insured nor the insurer's actual knowledge of the claim satisfies the contractual obligation of an insured to give timely notice." Roofing Consultants, Inc. v. Scottsdale Ins. Co., 273 A.D.2d 933 (4th Dep't 2000) (citing American Mfrs. Mut. Ins. Co. v. CMA Enters., 246 A.D.2d 373 (1st Dep't 1998); Heydt Contr. Corp. v. American Home Assur. Co., 146 A.D.2d 497, 499 (1st Dep't 1989)). An insurer is not obligated to disclaim coverage until an additional insured himself provides notice of an accident or claim. (Roofing Consultants, 273 A.D.2d., at 934). A notice provision in a policy is a condition precedent to coverage; absent a valid excuse, the failure to satisfy the notice requirement vitiates the policy. Volmar, 300 A.D.2d at 42 (citing Sec. Mut. Ins. Co. v. Acker-Fitzsimons Corp., 31 N.Y.2d 436, 440 (N.Y. Ct.App. 1972). Where there is no excuse or mitigating factor for not giving notice, the question of reasonable notice is a legal determination. (Volmar, 300 A.D.2d at 43). The rationale behind this rule is to permit the insurer to protect itself through investigating the claim promptly. American Trans. Ins. Co. v. Sartor, 3 N.Y.3d 71, 75 (N.Y. Ct. App. 2004).

Here, in addition to the obligation imposed by New York law, a specific clause in the Charter Oak policy obligated the insured, as that term is defined in the policy, to

timely notify Charter Oak of any claim.  The Charter Oak policy states that "as soon as practicable, the insured or other person making claim shall give us written notice of claim under this SUM[8] coverage."  (Ex. 7).  The legal standard for such language is that notice be given in a reasonable amount of time, considering all of the circumstances. Security Mutual, 31 N.Y.2d, at 441.

Underwriters contends that "counsel for Ms. Yuan placed Charter Oak on notice of the subject claim," referring to a letter written to the Parks by Yuan's counsel.  That letter requested that the Parks forward the letter to their insurer and "have a representative of same contact the undersigned and forward an Application of No-Fault Form, forthwith."  (Ex. 8).  This letter provides no language from which a reasonable person could infer that Lee and Kum Gang were tendering their defense to Charter Oak, and if it did it would be irrelevant, since Yuan's counsel did not represent Lee and Kum Gang and the demand of an injured claimant cannot substitute as notice by a potential additional insured.

The reasoning of Volmar is on point.  In that case, a subcontractor was responsible for a fire during a renovation project that caused damage to a building owned by the City.  The subcontractor ("E&Y") had its own insurance through Travelers. The contractor ("Volmar") had insurance under an agreement with "AIU" that arguably also covered the incident.  The subcontractor had demanded coverage from Travelers, which then sought a declaratory judgment that AIU was obligated to provide a defense and indemnification to the subcontractor in the underlying action.  The state court

---

[8]  According to the policy, SUM refers to "Supplementary Uninsured/Underinsured Motorists coverage."  (Ex. 7) (footnote added).

found Travelers' demand untimely, and thus held that AIU had no obligation to defend or indemnify either Travelers' or the subcontractor--despite the fact that AIU had received notice of the fire only a few days after it occurred and E&Y's president had provided oral notice of the claim to AIU.  (Id., at 41).  In dismissing Travelers' action, the court had this to say:

> As of December 1998, AIU had no reason to expect that E&Y was seeking coverage under its policy.  E&Y had looked to its other insurer, Travelers, for defense and indemnification, and, further, had commenced a third-party action against Volmar, who was also insured by AIU.  Given these circumstances, AIU had no basis to disclaim with respect to E&Y until it received the latter's demand for defense and indemnification.

(Id., at 45).

Here, Underwriters disclaimed coverage as to its insureds, Lee and Kum Gang, based upon exclusions that this Court has found inapplicable.  On December 16, 2003 nearly nine months after the initiation of the underlying tort suit, Underwriters wrote "in the interests of the insureds," herein named as defendants to Underwriters' motion, to tender their defense to Charter Oak.[9]  (Ex 10).  There is not even an assertion, much less evidence, that either Lee or Kum Gang ever requested Charter Oak to defend them in the underlying action previous to this.  To the contrary, the claim file and party depositions imply that Kum Gang and Lee tendered their defense to their insurer, Underwriters. (See, e.g., Exs. 9, 12, 13).

Underwriters contends that "a claimant is statutorily empowered to fulfill an insured's obligation to provide timely notice of a claim to its insurance carrier," citing American Transit Ins. Co. v. Sartor, 3 N.Y.3d 71, 76 (N.Y. Ct. App. 2004) (holding that

---

[9]  That letter refers to Charter Oak as "Travelers."  (See Ex. 10).

injured had right to notify tortfeasor's insurer of the harm pursuant to N.Y. Ins. Law §

3420(a)(3), but failure to do so justified insurer's disclaimer as to both the victim and

the insured); Gen. Acc. Ins. Group v. Cirucci, 46 N.Y.2d 862 (N.Y. Ct. App. 1979)

(insured's failure to timely notice insurer of accident is not effective against injured

claimants); and Ins. Corp. of New York v. Empire Construction Corp. of Long Island,

2004 WL 2785224 (N.Y. Sup Ct. 2004) (insurer's failure to disclaim coverage to injured

party in a timely manner was ineffective as to injured party).  In these cases, courts were

faced with questions arising from the notice obligations with which injured parties must

comply when the insured has failed to provide notice.  Although neither party has

briefed the issue directly, it is apparent that these cases refer to the statutory right under

N.Y. Ins. Law § 3420(a)(3) of an injured party to provide notice to an insurer in order to

preserve its right to collect against a financially responsible defendant.[10]  (See American

Transit, supra, at 78).  None of the cases deal with an instance in which a potential

additional insured seeks to piggyback its notice of claim upon an injured party's notice,

and the rationale–to protect the injured parties from a lack of diligence on the part of

the tortfeasor–is not applicable here, where the additional insured is the alleged

tortfeasor.  The rule that each insured tender notice of its defense is therefore the

applicable law.  Needless to say, it is clear from American Transit that a failure by any

party, including the injured party, to properly notify the insurer, in this case Charter

---

[10] Section 3420(a)(3) recites the provisions required of all insurance contracts in New York state,
including:

> A provision that notice given by or on behalf of the insured, or written notice by or on
> behalf of the injured person or any other claimant, to any licensed agent of the insurer in
> this state, with particulars sufficient to identify the insured, shall be deemed notice to the
> insurer.

Oak, according to the terms of its policy, permits the insurer to disclaim coverage. (Id., at 79). Lee and Kum Gang were required to tender their defense to Charter Oak, or subject themselves to the risk of timely disclaimer.

Assuming that Underwriters' December 16 letter was a tendering of their defense to Charter Oak, that delay is untimely as a matter of law. (See, e.g., Deso v. Lancashire Indem. Co. of America, 3 N.Y.2d 127 (N.Y. Ct. App. 1957) (51-day delays in notifying insurers of an accident unreasonable as a matter of law). Even if it were a tender of defense, the subsequent disclaimer issued by Charter Oak was timely, and adequately expressed a basis for disclaiming coverage–specifically, the failure to timely request coverage and to forward the pleadings in the underlying action. (Ex. 11). Therefore, Charter Oak has no duty to defend either Lee or Kum Gang in the underlying negligence action.

### B. Auto Business Exclusion

The parties dispute whether or not the "auto exclusion" in the Charter Oak policy excludes coverage for Lee and Kum Gang. Although the Court finds that Lee and Kum Gang's failure to timely tender their defense to Charter Oak would, independently, justify denying Underwriter's motion, it also finds that neither Lee nor Kum Gangs were ever covered under the Charter Oak policy, since that "auto business" exclusion applied.

### 1. Policy exclusion

The insurers agree that Lee was a permissive user of the Mr. Park's vehicle,[11]

---

[11] Carter v. Travelers Ins. Co., 113 A.D.2d 178 (1st Dep't 1985), held that an auto owner's delivery of his vehicle to parking lot attendants constituted a permissive use under Vehicle and Traffic Law § 388. The Carter court noted the central public policy concern that "one injured by the negligent operation of a motor vehicle should have recourse to a financially responsible defendant. The owner of the automobile is the obvious candidate..." (Id., at 182) (citing Continental Auto Lease Corp. v. Campbell, 19 N.Y.2d 350,

making Mr. Park presumptively liable for Lee's negligence and making him an "additional insured," covered under the Charter Oak insurance policy, which defines an insured to include "anyone else using your car if the use is (or is reasonably believed to be) with your permission..." (Ex. 7).

There is, however, an exception to the policy–an "auto business" exclusion. The Charter Oak exclusion states that:

> It does not cover: (a) any vehicle while being used or maintained in an *auto business*. However it does cover *you*, a *relative* or any partner or employee of either, for *your car* while it is being used or maintained in such a business.

("Charter Oak Policy," Ex. 7, page 2 of 11).

Under the policy definitions, "*Auto Business* means the occupation or business of selling, repairing, servicing, storing, parking or transporting vehicles." (Ex. 7, page 11 of 11).

## 2. Application of law

It appears that no New York Court of Appeals case controls the disposition of this issue. Two New York Supreme Court cases, however, guide this Court's decision that the "auto business" exclusion in the Charter Oak policy is enforceable, and therefore Charter Oak has no duty to cover or defend Lee or Kum Gang. (See, Strizik v. Home Indemnity Co., 137 Misc.2d 12 (N.Y. Sup. Ct. 1987); General Accident Group v. Frintzilas, 111

---

352 (N.Y.Ct. App. 1967). It would seem that the objective of permitting a tort victim to reach a deep pocket could simply be achieved by permitting the plaintiff to sue the parking lot or restaurant whose employee was responsible for the negligence and who would be just as likely to carry insurance. Moreover, this Court finds Judge Kupferman's dissent quite sensible when he reasons that, as a consequence of this rule, "no thinking automobile owner will accept valet parking or allow a garage attendant to park the car." However, to the extent Carter compels a contrary result, it is not entirely apposite, since it decided simply that N.Y. Veh. & Traff. Law § 388 provided that car owners were vicariously liable for the acts of permissive users. The question here, however, is whether N.Y. Veh. & Traff. Law § 345 compels the insurer to cover and defend all prospective users. As discussed infra, it does not.

Misc.2d 306 (N.Y.Sup.Ct. 1981)).

In <u>Strizik</u>, plaintiff was a valet who, while driving the owner's car, struck the owner.  He sought a declaration obligating defendant, the owner's insurer, to defend him in the underlying tort action brought by the injured owner.  The policy excluded coverage for  "[a]nyone driving the covered automobile 'while employed or otherwise engaged in the business or occupation of ...parking'" (<u>Strizik</u>, 137 Misc.2d, at 13).  The Court found that the insurer had no duty to defend the plaintiff-valet because the auto business exception applied.  Moreover, it noted that the Court of Appeals had stated that the Vehicle and Traffic Law does not require insurers to cover every permissive driver as an additional insured.  (<u>Id.</u>, at 13) (citing <u>General Acc. Fire & Life Assur. Corp. v. Piazza</u>, 4 N.Y.2d 659, 665 (N.Y.Ct. App. 1958); <u>Hiscock v. Kuinlan</u>, 62 Misc. 2d 842, 844-845 (N.Y.Sup. Ct. 1970)).

<u>General Accident Group v. Frintzilas</u>, 111 Misc.2d 306 (N.Y.Sup.Ct. 1981) arrived at a similar result.  In this action, Frintzilas was struck by a vehicle operated by Maniscalco, a parking lot attendant, while Maniscalco "was backing the vehicle across Roosevelt Avenue from a parking lot on the north side to one on the south side."  The parking lot was owned by Dominick Rello ("Dominick Rello Parking Lot").  The vehicle was owned by Goldstein, whose wife had brought the car to the parking lot for the purpose of having it parked. (<u>Id.</u>, at 306-307).  Three insurers were involved; Empire, the automobile insurance carrier for Goldstein; Allstate, the auto insurance carrier for Maniscalco; and General, the general commercial carrier for the parking lot business.  The Empire and Allstate policies contained an "auto business" exclusion similar to the one at issue here.  In both, an auto business was defined as "the business or occupation

of selling, repairing, servicing, storing or parking automobiles." (Id., at 308). The General policy did not contain the aforementioned exclusion, containing instead an exclusion for bodily injury caused by the operation of a variety of vehicles, the details of which are not relevant here. Excepted from that exclusion was "the parking of an automobile on insured premises, if the automobile is not owned by or rented or loaned to any insured, premises defined as including ways immediately adjoining the premises." (Id., at 309) (quotation marks omitted).

Although the parties disputed whether or not Maniscalco was an employee for reasons not relevant here, the court found he was an employee and that the auto business exclusions contained in the Empire and Allstate policies applied; those insurers were therefore relieved of their obligations to contribute to the settlement. General, on the other hand, was obligated to pay, since the exception to its general vehicle use exclusion was applicable. Other New York courts have enforced auto business exclusions under similar circumstances. (See, e.g., Nationwide Mut. Ins. Co. v. Exchange Mut. Ins. Co., 49 Misc.2d 707 (N.Y.Sup.Ct. 1966) (upholding auto business exclusion when vehicle being driven home to owner by a gas station attendant after cleaning was involved in an accident); Home Insurance Company v. Hartford Accident & Indemnity Co., 80 Misc.2d 100 (N.Y.Sup.Ct. 1974) (upholding auto business exclusion where car driven by the car painter was involved in an accident when it was being returned to the owner).

Underwriters attempts to distinguish Strizik, arguing that the facts are "markedly different." (Plt. Rep. Mem. 7). Specifically, Underwriters argues that the valet in Strizik was an employee of an independent company hired by the restaurant owner, whereas

here, the valet services provided were "incidental" to those provided by the Restaurant. This distinction is unavailing.

The facts of this case are that the valet service was a full-time professional service. The Restaurant rented off-site space to park its customers' cars. (Yoo Dep., 6:9-15). It employed a salaried valet manager. (Id. 10:6-20). During the period in question, they employed about eight valets. (Id. 11:4-6). When it employed valet parkers, it requested the valet's license information. (Id. 12:21-23). The valets wore uniforms with reflective patches and carried "lighting poles" to direct traffic in and out of the parking lot at night. (Id. 17:17-21). Patrons were given a ticket for the return of their vehicle. (Park Dep., 7:23-24). Employees were trained as to how cars were to be driven and where they would go. (Lee Dep., 22:6-8). In particular, they were trained as to how to identify where cars were parked in the YMCA lot, and to report that information to the valet manager. (Lee Dep., 34:2-4). In short, the evidence in the record provides every indication that Kum Gang was operating an organized parking service.

Although the valet service was "free," and certainly offered incident to the core Restaurant business, these considerations need not inform this decision. It doesn't matter whether the Restaurant charged its patrons separately for the valet service or indirectly by the prices on its menu; what is relevant is that they held themselves out to offer a service specifically excluded under the Charter Oak policy, namely, the parking of automobiles, and the accident occurred while that service was employed.

Underwriters' interpretation of Strizik gives undue emphasis to the question of the nominal owner of the parking services. Under their interpretation, if the valet service had been carried out by a different company, but in the exact manner described

herein, <u>Strizik</u> would apply.  There is no indication in <u>Strizik</u>, however, that this distinction determined that court's holding, and no reason to assume that it did, since the impetus for acquiring insurance–the risk of tort liability–would motivate both a restaurant with valet service and an independent parking business equally.

Underwriters' interpretation is also unpersuasive when the public policy implications are considered.  When a business, restaurant or otherwise, holds itself out as offering a parking service, it is reasonable for an insured to assume that the business will be liable for its own negligence and the negligent acts of its employees.  Their actions are largely beyond the automobile owners' direct control.  The auto business exclusion reflects this assumption by relieving the auto insurer for liability from such negligence.  Ultimately, that inures to the insured's benefit in the form of lower premiums.  "To include the excluded class in the ordinary policy would tend only to increase the premium therefor and put a burden upon the insurer which does not in reason or in principle belong to him." <u>Nationwide Mutual</u>, 49 Misc.2d at 711. (<u>C.f.</u>, 8A <u>Couch on Insurance</u> § 120:76 (3d ed. 2005)).

Underwriters seeks to salvage its argument by citing several cases finding owner liability despite the "auto business" exclusion.  <u>See, e.g.</u>, <u>Erie Ins. Group v. Nationwide Mut. Fire Ins. Co.</u>, 190 A.D.2d 1086 (4th Dep't 1993); <u>Aetna Casualty and Surety Co. v. Allstate Ins. Co.</u>, 67 Misc. 2d 333 (N.Y.Sup. Ct. 1970).

In <u>Erie</u>, the question was whether or not an auto business exclusion applied when a vehicle was being test-driven by a service station employee who caused an accident. There, the Court held that this did not constitute a use in the "auto business," since "auto business" exclusions were only for instances in which the vehicle was actually used

in the business.  For this proposition, the <u>Erie</u> court relied upon <u>Aetna</u>.  <u>Aetna</u>, however, is of weak precedential value here.

In <u>Aetna Casualty and Surety Co. v. Allstate Ins. Co.</u>, 67 Misc. 2d 333 (N.Y.Sup. Ct. 1970), the Supreme Court of Broome County dealt with a coverage dispute arising from an accident where a car owner had permitted a parking lot attendant at a department store to park her car.  The attendant struck a pedestrian.  Allstate, the automobile insurer, refused a demand by the department store and its attendant to defend them in the underlying action.  A settlement of that action was reached.  Aetna, the insurer of the department store and its parking lot, sought indemnification from Allstate via a declaration of coverage under the respective policies.  Allstate asserted that the policy did not cover the accident, since it contained an "automobile exclusion" similar to the one at issue in the present case.

Despite the parking exception specifically defined in the automobile exclusion, the supreme court, relying upon authority outside the jurisdiction, reasoned that "an automobile 'used in the automobile business', means one actually used for some purpose in the business such as a tow truck, demonstration auto, or vehicle used to service or deliver supplies."  (<u>Id.</u>, at 335) (citing <u>McCree v. Jenning</u>, 55 Wash. 2d 725; <u>Le Felt v. Nasarow</u>, 71 N.J. Super. 538, aff'd; 76 N.J. Super. 576, cert. Den. 39 N.J. 86; <u>Allstate v. Shepby Mut. Ins. Co.</u>, 269 N.C. 341; <u>Chavers v. St. Paul Fire & Mar. Ins. Co.</u>, 188 F.Supp. 39, aff'd 295 F.2d 812).

The <u>Aetna</u> decision's precedential value is undermined by that court's analysis.  A reading of the case makes it appear that the court ignored the specific definition of the term "automobile business" in the policy, because it is difficult to imagine why the

reasoning it applied in defining "auto business" should ever be applicable to a "parking service."  It is not clear how an automobile would be used in a parking business unless used precisely in the way the Parks' vehicle was used.  The Supreme Court's interpretation in <u>Aetna</u>, therefore, would simply give no effect to limitations in insurance policies that excluded coverages for "parking" auto businesses.  Such a reading is contrary to contractual interpretation under New York law, which disfavors interpretations that render at least one clause superfluous or meaningless.  <u>Galli v. Metz</u>, 973 F.2d 145 (2d Cir.1992).  Both <u>Aetna</u> and <u>Erie</u> are inapposite here, since the language of the Charter Oak policy clearly and unmistakably excludes vehicles used in the parking business, and plaintiff's reliance on these cases would lead to the unacceptable result that this clear language would mean nothing.[12]

The essentially undisputed evidence before the Court is that Kum Gang operated a valet parking service on behalf of its customers.  That service included taking the vehicle from the Restaurant premises to the YMCA parking lot.  The substance of the matter is that the Restaurant engaged in, among other things, the business of valet parking.  Whether it directly employed staff for this purpose or outsourced that business to an independent parking service is totally irrelevant, and cannot serve to cloud the "clear and unmistakable" language of the "auto exclusion" which bars liability when the vehicle is being "used" in an "auto business."  Charter Oak is therefore entitled to a

---

[12]     Both <u>Aetna</u> and <u>Piliero</u> have been cited as authority for the proposition that the auto business exception doesn't apply "where parking facilities are offered as an incidental service in connection with the conduct of an unrelated business, such as a department store."  70 N.Y. Jur. 2d <u>Insurance</u> § 1614 (2d ed. 2005) (citing <u>Aetna Casualty and Surety Co. v. Allstate Ins. Co.</u>, 67 Misc. 2d 333 (N.Y.Sup. Ct. 1970); <u>Piliero v. Allstate Ins. Co.</u>, 12 A.D.2d 130 (2d Dep't 1960) (exclusion limited to parking lots charging fees)).  Were the New York Court of Appeals to decide this matter, however, this Court is confident that it would apply the <u>Strizik</u>/<u>Frintzilas</u> line of reasoning and uphold the exclusion.

declaration that the auto business exclusion negates coverage for Lee and Kum Gang.

## **CONCLUSION**

Here, Underwriters has decided to disclaim coverage for its insured. Instead, it has sought out other insurance carriers in the hopes of shifting its contractual obligations to others. It cannot so easily escape its obligations:

> The duty to defend is personal to the relationship of this insurer and this assured, and...no matter what right of contribution the insurer may have ultimately by way of subrogation, it is contrary to the very nature of the contract that the insurer can scout around in hopes that it can find someone whose defense the assured is compelled to accept.

Travelers Indemnity Co., v. Standard Accident Ins. Co., 329 F.2d 329, 331 n. 2 (7th Cir.1964) (citing American Fidelity & Cas. Co. v. Pennsylvania T. & F. Mut. Cas. Ins. Co., 280 F.2d 453, 459-60 (5th Cir.1960).

For the foregoing reasons, it is hereby declared that Underwriters had and continues to have a duty to defend Lee and Kum Gang in the underlying state court action, and that Charter Oak has no duty to defend Lee and Kum Gang, since Lee and Kum Gang failed to tender their defense to them "as soon as practicable." The Court declines to exercise jurisdiction over all other party requests for declaratory relief.

Underwriters' motion is therefore denied in its entirety, while the Charter Oak's motion is granted in part and denied with respect to the apportioning of liability.

SO ORDERED.

Dated:     July 28, 2006
           Brooklyn, New York

_____/s/_____

I. Leo Glasser
United States District Judge

A copy of the foregoing was sent electronically on this day to:

Steven Verveniotis, Esq. & Adam I. Kleinberg, Esq.
Miranda & Sokoloff, LLP
240 Mineola Boulevard
Mineola, NY 11501

Attorneys for Plaintiff

Thomas V. Incantalupo
Mitchell & Incantalupo, Esqs.
98-20 Metropolitan Avenue
Forest Hills, New York 11375

Attorneys for Defendants St. Paul Travelers and Charter Oak